UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) |
| | ) No. 6:12-CR-50-GFVT-HAI-1 |
| v. | ) ) RECOMMENDED DISPOSITION |
| WESLEY WILEY GWATHNEY, | ) ) |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Van Tatenhove (D.E. 40 at 2), the Court considers reported violations of supervised release conditions by Defendant Wesley Gwathney. Judge Van Tatenhove entered a judgment against Defendant on June 26, 2013, upon a plea of guilty to distribution of less than fifty kilograms of a mixture or substance containing a detectable amount of marijuana, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). D.E. 31. Defendant received a sentence of seventy months of imprisonment followed by three years of supervised release on each count, to run concurrently. *Id*. at 2-3. Defendant began his initial term of supervised release on December 19, 2017.

On March 2, 2018, the United States Probation Office ("USPO") issued a Report on Offender Under Supervision, alleging that Defendant submitted a urine sample that tested positive for marijuana via instant testing and confirmation laboratory testing. D.E. 38. Defendant later admitted to using marijuana. *Id*. The USPO recommended that no action be taken, and Judge Van Tatenhove approved the recommendation on the same date. *Id*. On May 10, 2018, the UPSO submitted a Request for Modifying the Conditions or Term of Supervision

With Consent of the Offender because Defendant admitted to using marijuana again and submitted a urine sample that tested positive for marijuana via laboratory testing. D.E. 39. Defendant requested to participate in an intensive outpatient program. *Id*. The Request described the intensive outpatient program and requested that the terms of Defendant's supervision be modified to require Defendant to complete and abide by the rules of the program. D.E. 39. Judge Van Tatenhove approved the modification. *Id*. Defendant remained in the program at the time of the revocation proceedings described below.

## I.

On June 28, 2018, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report alleges that, on June 19, 2018, Defendant provided a urine sample that tested positive for methamphetamine via laboratory testing. The Drug Test Report, provided by Alere Laboratories, indicated that the urine sample was dilute. The Report charges two violations stemming from this conduct. First, as Violation #1, the Report charges that Defendant violated Standard Condition #7, which requires him to "not purchase, possess, use, distribute, or administer any controlled substance . . . , except as prescribed by a physician." This is a Grade C violation. Second, as Violation #2, the Report charges that Defendant violated the prohibition against committing another federal, state, or local crime. This violation is based on Defendant's possession of methamphetamine, which, given Defendant's prior drug conviction, is a violation of 21 U.S.C. § 844(a) and a Class E felony. This is a Grade B violation.

The Court conducted an initial appearance pursuant to Rule 32.1 on July 10, 2018, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 44. At the initial appearance, the United States made an oral motion

for interim detention. *Id*. Defendant did not argue for release. *Id*. The Court found that detention was appropriate as Defendant did not carry the heavy release burden imposed upon him under Rule 32.1(a)(6) and 18 U.S.C. § 3143(a). *Id*.

At the final hearing on July 12, 2018, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 45. Defendant competently entered a knowing, voluntary, and intelligent stipulation to both violations. *Id*. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for Violations #1 and #2 as described in the Report. *Id*. In the Supervised Release context, the Sixth Circuit treats controlled substance use as equivalent to possession. *See United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000). The United States thus established Violation #2 under the standard of § 3583(e).

## II.

The Court has evaluated the entire record, the Report, all accompanying documents, and the sentencing materials from the underlying judgment. Additionally, the Court has considered all of the 18 U.S.C. § 3553 factors imported into the § 3583(e) analysis. Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant was originally convicted of distribution of less than fifty kilograms of marijuana, a Class C felony given a prior felony drug conviction (D.E. 18), and possession of a firearm by a convicted felon, a class C felony. *See* 18 U.S.C. § 3559(a)(3), § 924(a)(2); 21 U.S.C. § 841(b)(1)(D). For a class C felony, the maximum revocation sentence provided under § 3583 is twenty-four months of imprisonment. 18 U.S.C. § 3583(e)(3). Under § 3583(h) and § 841(b)(1)(D), there is no maximum term of supervised release that may be re-imposed.

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438–39 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). Under Section 7B1.1, Defendant's admitted conduct in Violation #1 would qualify as a Grade C violation. His admitted conduct in Violation #2 would qualify as a Grade B violation. Given Defendant's criminal history category of V (the category at the time of the conviction in this District) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter Seven, is eighteen to twenty-four months. U.S.S.G. § 7B1.4(a).[1]

The United States recommended revocation with twenty months of incarceration followed by three years of supervised release. In support of this recommendation, the government emphasized that Defendant violated his supervision by using controlled substances three times in seven months. Defendant was released in December, the government noted, and then he used marijuana in March, which resulted in an approved request for no action. Then, Defendant used marijuana again in May, which resulted in a modification, requiring him to complete an intensive outpatient program. Now, the government emphasized, Defendant has violated his supervision a third time by using methamphetamine. The government argued that Defendant's presentence report indicates that he used marijuana and methamphetamine relatively frequently over a long period of time, but that it does not indicate an addiction that consumed his

---

[1] *See* U.S.S.G. § 7B1.1(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

4

life. The government argued that his criminal history is very concerning because it includes: convictions for burglary, assault, and possession of a controlled substance; a probation violation for possessing a controlled substance; and a charge of trafficking in a controlled substance that was later amended. The government contended that this criminal history provided the background to his underlying offense, which similarly involved drugs and a violent firearm.

Regarding the nature and circumstances of the underlying offense, the government noted that Defendant was convicted of possession of a firearm by a convicted felon, but argued that he could have been charged with use of a firearm in furtherance of a drug trafficking crime because the gun was found with marijuana and a set of scales. The government argued that these facts aggravate and, combined with Defendant's long and violent criminal history, warrant incarceration to protect the public and deter future crimes. As mitigating, the government noted that Defendant stipulated to the violation conduct in Court. However, the government also noted that Defendant's decision to provide a dilute urine sample is similar to a denial of drug use, because both are attempts to mask use and breach the Court's trust. Defendant's original conviction involved distribution of marijuana and his previous two violations involved marijuana use; so, the government argued, Defendant's current use of methamphetamine is an unexplained escalation and increases the need to protect the public and deter future criminal conduct.

Defense counsel recommended inpatient substance abuse treatment in lieu of incarceration with a term of supervised release to follow, or, alternatively, a term of imprisonment with no term of supervised release to follow. In support of this recommendation, counsel cited Application Note 6 to Section 7B1.4 of the United States Sentencing Guidelines, which states that "[i]n the case of a defendant who fails a drug test, the court shall consider whether the availability of appropriate substance abuse programs, or a defendant's current or past

5

participation in such programs, warrants an exception from the requirement of mandatory revocation and imprisonment under 18 U.S.C. § 3565(b) and 3583(g)." U.S.S.G. § 7B1.4 app. 6. Counsel noted that Defendant had not had any inpatient substance abuse treatment despite his history of mental and physical abuse, marijuana use that began at the age of seven, and methamphetamine use that began at the age of fifteen. Counsel argued that these facts mitigate and support inpatient substance abuse treatment in lieu of incarceration.

Counsel stated that Defendant told his probation officer that he was overwhelmed before he used methamphetamine. Although counsel acknowledged that the USPO attempted to help Defendant by modifying the terms of his supervised release to require him to attend intensive outpatient treatment after his previous marijuana use, counsel argued that this was insufficient and that Defendant needs inpatient treatment to fight his addiction. Counsel explained that Defendant receives $700 per month through disability and is required to spend $240 per month on drug testing while in the intensive outpatient program, which creates poverty and instability. Counsel acknowledged that Defendant breached the Court's trust, but explained that, until now, Defendant has hesitated to ask for assistance.

Defendant addressed the Court and explained that he uses marijuana when he becomes stressed, and that he has been stressed since his release because he has had to rely on others for money and assistance. He recounted asking his probation officer to place him in an inpatient substance abuse program, and then calling thirty-two inpatient treatment providers after his previous marijuana use in an attempt to enter such a program. Defendant explained that many of the inpatient programs would not accept him because of his marijuana use and/or his insurance coverage, so he entered the intensive outpatient program instead. Defendant noted that outpatient treatment has been less helpful to him than counseling, and stated that he believed

inpatient treatment would be more beneficial because of its structured setting. Defendant did not complete the Residential Drug Assistance Program ("RDAP") while he was incarcerated on the underlying conviction because of an altercation with another inmate when he began the program.

### III.

Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also Crace*, 207 F.3d at 836 (equating use with possession). The lone exception to mandatory revocation would be if an appropriate substance abuse treatment program were available pursuant to § 3583(d). Although the undersigned ordinarily would not consider inpatient substance abuse treatment because Defendant's diluted urine sample demonstrates an attempt to conceal his drug use from the USPO and an unwillingness to take responsibility for his actions, it is clear Defendant relies on controlled substances to cope with stress. Defendant has not had the benefits of inpatient substance abuse treatment and did not complete the RDAP program. He requested inpatient treatment from the USPO and attempted to find programs on his own. Although it is unclear whether Defendant is serious about facing his addictions, the Court finds that inpatient treatment is appropriate. But, Defendant's breach of the Court's trust requires a period of imprisonment. To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range.

The Court first considers the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant's convictions for distributing marijuana and possessing a firearm are very troubling

and serious. Both pose risks of danger to the community and increase the need to protect the public from future crimes. Additionally, Defendant's presentence report indicates that his probation in Pulaski Circuit Court was violated because he used marijuana, conduct similar to his repeated use of drugs while on supervised release in this Court. Defendant's pattern of drug use to cope with feelings of stress constitutes criminal conduct and endangers the community.

The Guidelines suggest that the *primary* wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into § 3583(e). Defendant has breached the Court's trust by using marijuana twice and methamphetamine once while on supervision. He clearly does not cope with stress in a healthy way. While Defendant will encounter stressors in his everyday life, using illegal controlled substances to deal with these stressors will not be tolerated. A term of incarceration is necessary to address these breaches of the Court's trust.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, the Court recommends a below-Guidelines sentence of twelve months of imprisonment. When departing from the Range, the Court must provide an adequate explanation and "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state 'the *specific reason* for the imposition of a sentence different

from that described [in the applicable Guidelines or policy statements.]" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

Here, a below-Guidelines sentence is justified by Defendant's history of mental and verbal abuse, as noted in his presentence report. Defendant has a long history of using marijuana and methamphetamine without inpatient substance abuse treatment. The Court has carefully weighed Defendant's history of drug abuse, which aggravates, against Defendant's history of mental and verbal abuse, which mitigates, and finds that a term of incarceration below the Guidelines Range, or one year, combined with inpatient substance abuse treatment to immediately follow is sufficient but not greater than necessary to meet the § 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e). Defendant is warned that any subsequent violations will likely result in the statutory maximum sentence of two years.

A court also may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Defendant's conviction under § 841(b)(1)(D) carries no maximum term of supervised release.

The government recommended three years of supervised release to follow incarceration. Defense counsel recommended a term of supervised release if the Court imposes inpatient substance abuse treatment in lieu of incarceration, or, alternatively, no term of supervised release if the Court imposes a term of imprisonment. Counsel argued that an additional term of supervised release would be futile if Defendant does not receive inpatient substance abuse treatment, because he faces such a severe drug addiction. The Court agrees with the

9

government's recommendation and recommends three years of supervised release following incarceration. However, the Court agrees with defense counsel that Defendant needs inpatient substance abuse treatment. Therefore, the Court recommends that the conditions of Defendant's supervised release be modified to require completion of a six-month inpatient substance abuse treatment program immediately following his term of incarceration.

Based on the foregoing, the Court **RECOMMENDS**:

1. That Defendant be found guilty of Violations #1 and #2;

2. Revocation with a term of twelve months of imprisonment; and

3. Three years of supervised release to follow, under the conditions imposed at Docket Entries 31 and 39, with the added condition that Defendant shall complete a six-month inpatient substance abuse program immediately following the term of imprisonment.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 18th day of July, 2018.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge