UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | No. 6:12-CR-50-GFVT-HAI-1 |
| v. | ) ) | RECOMMENDED DISPOSITION |
| WESLEY WILEY GWATHNEY, | ) ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

On referral from District Judge Van Tatenhove (D.E. 40 at 2), the Court considers reported violations of supervised release conditions by Defendant Wesley Gwathney. Judge Van Tatenhove entered a judgment against Defendant on June 26, 2013, upon a plea of guilty to distribution of less than fifty kilograms of a mixture or substance containing a detectable amount of marijuana, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). D.E. 31. Defendant received a sentence of seventy months of imprisonment followed by three years of supervised release on each count, to run concurrently. *Id*. at 2-3. Defendant began his initial term of supervision on December 19, 2017.

On March 2, 2018, the United States Probation Office ("USPO") issued a Report on Offender Under Supervision, alleging that Defendant submitted a urine sample that tested positive for marijuana via instant testing and confirmation laboratory testing. D.E. 38. Defendant later admitted to using marijuana. *Id*. The USPO recommended that no action be taken, and Judge Van Tatenhove approved the recommendation on the same date. *Id*. On May 10, 2018, the UPSO submitted a Request for Modifying the Conditions or Term of Supervision With Consent of the Offender because Defendant admitted to using marijuana again and

submitted a urine sample that tested positive for marijuana via laboratory testing. D.E. 39. Defendant requested to participate in an intensive outpatient program. *Id*. The Request described the intensive outpatient program and requested that the terms of Defendant's supervision be modified to require Defendant to complete and abide by the rules of the program. D.E. 39. Judge Van Tatenhove approved the modification. *Id*. Defendant remained in the program at the time of the revocation proceedings described below.

On July 31, 2018, Defendant's term of supervised release was revoked due to the use and resulting possession of methamphetamine. *See* D.E. 48. At that time, Defendant was sentenced to twelve months of imprisonment, with three years of supervised release to follow. *Id*. A special condition was added to the terms of Defendant's supervision, requiring him to complete six months of outpatient substance abuse treatment. *Id*. Defendant began his term of supervision on July 8, 2019. On January 15, 2020, Defendant satisfied the inpatient substance abuse treatment special condition.

I.

On August 11, 2020, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report alleges that, on July 29, 2020, Defendant provided a urine sample that tested positive for methamphetamine via instant testing and was submitted for laboratory testing. Defendant denied the use of methamphetamine but stated that he had used a vaping device that contained marijuana. The Drug Test Report, provided by Alere Laboratories, indicated that the urine sample was positive for methamphetamine and dilute. The Report charges two violations stemming from this conduct. First, as Violation #1, the Report charges that Defendant violated Mandatory Condition #3, which requires him to "refrain from any unlawful use of a controlled substance." This is a Grade C violation. Second, as Violation

2

#2, the Report charges that Defendant violated Mandatory Conditions #1 and #2, which required him to "not commit another federal, state, or local crime" and to "not unlawfully possess a controlled substance." Based on his criminal history, which includes a prior drug conviction, this is a violation of 21 U.S.C. § 844(a) and a Class E felony. This is a Grade B violation.

The Court conducted an initial appearance pursuant to Rule 32.1 on August 28, 2020, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 53. At the initial appearance, the United States made an oral motion for interim detention. *Id*. Defendant did not argue for release. *Id*. The Court found that detention was appropriate as Defendant did not carry the heavy release burden imposed upon him under Rule 32.1(a)(6) and 18 U.S.C. § 3143(a). *Id*.

At the final hearing on September 10, 2020, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 56. Defendant waived a formal hearing and stipulated to the violations in the Report. *Id*. The Court found Defendant to be competent to stipulate to the violations and that the stipulation was knowingly, voluntarily, and intelligently made. *Id*. The Court also found the stipulation to be consistent with the advice of counsel. *Id*.

Of course, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). Defendant's stipulation permits the Court to find that he engaged in conduct that is a Grade B violation under the Guidelines. *See* U.S.S.G. § 7B1.1(a)(2).

During the final hearing, the parties did not have an agreement on the appropriate sentence for Defendant's violations. The government recommended two years of imprisonment with no supervised release to follow. Defense counsel recommended six months of

imprisonment followed by six months of inpatient substance abuse treatment with no supervised release to follow pursuant to U.S.C. § 3583(d).

The government focused its argument on the nature and circumstances of the offense and the history and characteristics of Defendant. The government noted Defendant's multiple instances of drug use while on supervised release and that he was given leniency by the Court when his supervised release was not revoked despite two separate positive results for marijuana use. The government argued that this shows the high amount of trust the Court gave Defendant that was ultimately breached. The government also noted Defendant's prior revocation due to methamphetamine use for which he was sentenced six months below the guideline range in addition to inpatient treatment. The government also pointed out Defendant's two burglary convictions and one possession of controlled substance conviction, which resulted in a probation violation. The government stated that Defendant's methamphetamine addiction began when he was fifteen years old.

As to the need for the sentence to deter criminal conduct and promote respect for the law, the government noted that, although Defendant has previously received lengthy state court sentences, the imprisonment portions of those sentences were routinely suspended. However, the government stated that Defendant's federal sentence of seventy months was lengthy. The government argued that, while it is unlikely that a lengthy term of imprisonment will specifically deter Defendant's criminal conduct, it will generally deter others from the same criminal conduct and will protect the public. As to the need for education, training, and treatment, the government stated that Defendant has already been provided with multiple treatment opportunities and no other treatment options are available.

Defense counsel stated that one of the special conditions of supervision from Defendant's first revocation was the requirement to complete six months of inpatient substance abuse treatment. Defense counsel noted, however, that Defendant only completed three months of treatment before he was moved to a sober living community, which is not an inpatient substance abuse treatment facility. The Court questioned United States Probation Officer Nick Jones, who stated that Defendant was transitioned to a sober living community because of his progress and his own request to be placed there based on allegations that staff members at the inpatient treatment facility were harassing him.

Defense counsel argued that the physical and mental abuse Defendant and his mother suffered from his father and the marijuana use that began at the age of seven are mitigating factors. Defense counsel further argued that despite these hardships, Defendant earned his G.E.D. and has maintained regular work. As background for the current violations, defense counsel explained that Defendant's wife was pregnant with twins, but unfortunately suffered a miscarriage and attempted suicide shortly thereafter. Defense counsel argued that these two tragic circumstances coupled with Defendant's history led him to revert to drug use. As to the dilute drug test result, defense counsel stated that Defendant suffers from kidney stones and a permanent stint was previously implanted, which may have led to the dilute test result.

Defendant addressed the Court and explained that he drinks a high volume of fluids every day because of the stint that was implanted, which may have caused the dilute test result. Defendant also stated that he suffers from seizures and issues with his heart but has not been able to seek medical treatment due to a lack of insurance. Defendant explained that his wife's suicide attempt, medical issues, and other stressors led to his relapse, but that none of those are excuses for his actions.

II.

The Court has evaluated the entire record, including the Report, its accompanying documents, and Defendant's underlying judgment and sentencing materials. Additionally, the Court has considered all of the 18 U.S.C. § 3553 factors imported into the § 3583(e) analysis. Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant was originally convicted of distribution of less than fifty kilograms of marijuana, a Class C felony given a prior felony drug conviction (D.E. 18), and possession of a firearm by a convicted felon, a class C felony. *See* 18 U.S.C. § 3559(a)(3), § 924(a)(2); 21 U.S.C. § 841(b)(1)(D). For a class C felony, the maximum revocation sentence provided under § 3583 is twenty-four months of imprisonment. 18 U.S.C. § 3583(e)(3). Under § 3583(h) and § 841(b)(1)(D), there is no maximum term of supervised release that may be re-imposed.

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438–39 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). The Guidelines also instruct that "[w]here there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b).

Under Section 7B1.1, Defendant's admitted conduct in Violation #1 would qualify as a Grade C violation. His admitted conduct in Violation #2 would qualify as a Grade B violation. Given Defendant's criminal history category of V (the category at the time of the conviction in this District) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter Seven, is eighteen to twenty-four months. *See* U.S.S.G. § 7B1.4(a).

### III.

Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also Crace*, 207 F.3d at 836 (equating use with possession). However, even if revocation and imprisonment were not mandated by Congressional directive, revocation and imprisonment would be appropriate in this case. *See* U.S.S.G. § 7B1.3(a).

The Court first considers the nature and circumstances of Defendant's conviction. Defendant's convictions for distributing marijuana and possessing a firearm are very troubling and serious. Both pose risks of danger to the community and increase the need to protect the public from future crimes. Additionally, both of Defendant's revocations were caused by his continued substance abuse. Defendant's pattern of drug use to cope with feelings of stress constitutes criminal conduct and endangers the community.

The Court must also consider whether a defendant needs any education, training, or treatment. Defendant needs continued treatment for his substance issues, as well as his medical conditions, however the Court has provided every opportunity it can to allow Defendant access to the appropriate aids, without success. Defendant was sentenced below the Guidelines range at this last revocation, which was followed by inpatient treatment and a term of supervision, but still returned to drug use. According to the Guidelines, this alone is grounds for an upward

departure. *See* U.S.S.G. §7B1.4 (n. 3). The Court's resources are better focused elsewhere, and thus, further ordered treatment is not appropriate in this case.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into § 3583(e).

Defendant has breached the Court's trust by using methamphetamine while on supervision and, initially, lying about that use. Moreover, this is not the first breach of the Court's trust. Previously, the Court showed leniency and placed its trust in Defendant when his supervised release was not revoked despite two instances of marijuana use. The Court's trust was also breached by Defendant's first revocation for methamphetamine use, and yet, the Court sentenced Defendant below the Guidelines range. Unfortunately, Defendant has yet to step out of the long shadow that personal tragedies and substance abuse have cast over him. While Defendant will encounter stressors in his everyday life, using illegal controlled substances to deal with these stressors will not be tolerated. The Court has placed high amounts of trust in Defendant to encourage good behavior and choices but to no avail. A term of incarceration is necessary to address these breaches of the Court's trust.

The requirement that the Court seek to avoid unwarranted sentencing disparities among defendants with similar records who are found guilty of similar conduct is addressed by a recommended sentence within the Guidelines range. A court also may re-impose supervised

8

release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Defendant's conviction under § 841(b)(1)(D) carries no maximum term of supervised release. However, the Court agrees with both parties that Defendant will not benefit from any additional terms of supervision. The Court has achieved all it can with Defendant while on supervision, and there is no justification for imposing an additional term of supervised release.

IV.

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS**:

1. That Defendant be found guilty of the violations;

2. Revocation with a term of twenty-one months of imprisonment at a facility closest to Defendant's home that can accommodate his health issues; and

3. No supervised release to follow.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and

rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 21st day of September, 2020.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge